IN THE

# United States Court of Appeals for the Third Circuit

CareDx, Inc.,

*Plaintiff-Appellant / Cross-Appellee,*

v.

Natera, Inc.,

*Defendant-Appellee / Cross-Appellant.*

Appeal from the U.S. District Court for the District of Delaware
No. 19-cv-662, Hon. Colm F. Connolly

## SUPPLEMENTAL BRIEF OF NATERA, INC.

Robert T. Smith
Timothy H. Gray
Katten Muchin Rosenman LLP
1919 Pennsylvania Ave. NW Suite 800
Washington, DC 20006-3404
Tel.: 202-625-3500
robert.smith1@katten.com
timothy.gray@katten.com

Bruce G. Vanyo
Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020-1604
Tel.: 212-940-8800
bruce@katten.com

Kristin J. Achterhof
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661-3693
Tel.: 312-902-5296
kristin.achterhof@katten.com

*Counsel for Natera, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

INTRODUCTION ..........................................................................1

ARGUMENT ................................................................................3

I.  The District Court's Decision Rests on Fundamental Analytical
    Errors. ................................................................................3

    A.  The court's "reliably comparable" and "statistical
        significance" theory, adapted from CareDx, fails on the law
        and the facts.......................................................................4

    B.  The court's "false by necessary implication" theory
        requires evidence CareDx failed to offer. ....................................10

II. No Jury Could Have Reasonably Found Claims B-H and J
    "Literally False" on the Evidence and Theories Presented at Trial. ...12

    A.  No jury could have reasonably found "Claim B" literally
        false. ...............................................................................12

    B.  No jury could have reasonably found "Claim C" literally
        false. ...............................................................................13

    C.  No jury could have reasonably found "Claim D" literally
        false. ...............................................................................13

    D.  No jury could have reasonably found "Claim E" and
        "Claim F" literally false. ......................................................15

    E.  No jury could have reasonably found "Claim G" literally
        false. ...............................................................................17

    F.  No jury could have reasonably found "Claim H"
        unambiguous. .....................................................................18

    G.  No jury could have reasonably found "Claim J"
        unambiguous. .....................................................................21

i

CONCLUSION .................................................................................................23

CERTIFICATE OF BAR MEMBERSHIP ..........................................................24

CERTIFICATE OF COMPLIANCE ...................................................................25

CERTIFICATE OF SERVICE ...........................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC,*
    774 F.3d 192 (3d Cir. 2014) ........................................................................18, 21

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*
    *Consumer Pharmaceuticals Co.,*
    290 F.3d 578 (3d Cir. 2002) ................................................................2, 11, 17

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.,*
    653 F.3d 241, 251 (3d Cir. 2011) ........................................................................2

*Pfizer, Inc. v. Miles, Inc.,*
    868 F. Supp. 437 (D. Conn. 1994) ........................................................2, 6, 7

*Riddell, Inc. v. Schutt Sports, Inc.,*
    724 F. Supp. 2d 963 (W.D. Wis. 2010)................................................................7

**INTRODUCTION**

On remand, the district court invoked two overlapping theories of literal falsity (one of which CareDx never raised) to salvage the jury's verdict of liability on Claims B-H and J, but both theories require an evidentiary showing that is absent here: how *a sophisticated audience of nephrologists*, not *the lay jury*, read and understood Natera's claims and comparisons. The court's first theory was CareDx's—that Natera's "comparisons" across two studies could not "establish" Natera's claims because "the data underlying the studies [were] not reliably comparable and lacked statistical significance." SA.4 (emphasis added). For its second theory, the court added a theoretical overlay of its own, holding the statements could be found *false by necessary implication* for the same reasons. *Id.*

In substance, the theories are carbon-copies, and neither is tenable. Under the district court's embrace of CareDx's "reliably comparable" standard, Natera's comparisons of the results of separate studies could be "literally false" even though the underlying studies were reliable, the comparisons were accurate and properly footnoted (*e.g.*, the 89% reported in Sigdel *is* greater than the 59% reported in Bloom), and the advertisements nowhere stated, suggested, or implied statistical significance. That outcome

contradicts *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437 (D. Conn. 1994), a well-reasoned decision that Natera raised but neither the district court nor CareDx addressed. Nor does the court explain what work would be left for misleadingness liability, a doctrine CareDx abandoned, if a jury could find an accurate comparison *literally false* without evidence that the intended audience, sophisticated nephrologists, *necessarily understood* Natera's claims to imply statistical significance.

That, in turn, exposes a larger flaw in the court's analysis: Both theories required CareDx to prove how the *audience* read and understood the advertisements. False-advertising cases require that a factfinder determine "what words mean from the perspective of" the relevant consumer. *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 251 (3d Cir. 2011). The "necessary implication" doctrine similarly requires proof that "the audience would recognize the claim as readily as if it had been explicitly stated." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 587 (3d Cir. 2002) (quotation marks omitted). But CareDx failed to prove anything from the audience's perspective. It didn't even try. *See* Natera.Op.Br.32-43.

Instead of recognizing that CareDx simply failed to meet its burden (as the court appeared to do before submitting the case to the jury, JA1918), the district court extended a penumbra of *literal falsity*—limited, by design, to a narrow class of claims—to literally true, accurately cited comparisons of study results. Its judgment should be reversed.

## ARGUMENT

### I. THE DISTRICT COURT'S DECISION RESTS ON FUNDAMENTAL ANALYTICAL ERRORS.

The district court reasoned that the jury could have found literal falsity under either of two theories—(1) the "*comparisons*" "did not establish any claim that Prospera was superior to AlloSure *in any respect* because the data underlying the studies was not *reliably comparable* and *lacked statistical significance*"; or (2) Natera's advertisements "*necessar[ily] impl[ied]*" that the studies or data were "reliably comparable" and that the comparisons were statistically significant. SA.4 (emphasis added). But the court never explains *how* these messages were *literally false* (as opposed to merely misleading) to *nephrologists*. And CareDx never provided the evidence needed to decide this issue—a failing that dooms each theory the district court embraced.[*]

_____

[*] Natera's JMOL explained the flaws in CareDx's theory of establishment-claim liability applied to *all* the advertising claims the jury found false,

**A.    The court's "reliably comparable" and "statistical significance" theory, adapted from CareDx, fails on the law and the facts.**

The district court's first proposed basis for finding literal falsity erroneously embraces CareDx's flawed theory of the case while introducing inaccuracies that further undermine it. It held the jury could have reasonably concluded "*comparisons* of the…studies *did not establish any claim* that Prospera was superior…*in any respect* because the data…was *not reliably comparable* and *lacked statistical significance*." SA.4 (emphasis added). But there are at least three problems with this reasoning.

1. Collapsing the Relevant Test. Although the court accurately recited the parties' agreed-upon instructions governing the narrow establishment-claim branch of literal falsity, it deviated from the relevant test when applying that standard. The question is whether the "*studies or data*" establish the propositions attributed to them, JA2081 (1456:17-24) (emphasis

---

including the single claim the district court's first decision addressed. Had the district court resolved that claim by rejecting Natera's overarching argument, it could have properly stopped there. But the district court decided that claim on a *different* ground; it dissected the claim into two interpretations, found one interpretation literally false, but did not address the other interpretation nor the ambiguity inherent in the claim. JA12-13. As a result, the district court never grappled with Natera's overarching argument, and it declined to do so on remand.

4

added), and they did so here. For example, Natera accurately claimed that Sigdel reported 89% sensitivity, Bloom reported 59% sensitivity, and then made a literally true comparison of those results: 89% is greater than 59%.

In finding this and the other claims literally false, the court erroneously stated that "*comparisons*" themselves must "establish [the] claim." SA.4 (emphasis added). But the advertising claims *are* the comparisons. The court's analysis recasts the comparisons *as if they were a study* subject to "reliability" tests under establishment-claim law. They are not. They are footnoted statements accurately comparing cross-study datapoints. Hoping to muddy the waters, CareDx similarly collapsed the analytical framework at trial, urging the jury to ignore the literal truth of Natera's comparisons and find "comparisons" unreliable and, ultimately, literally false. JA1966(1341:19-25), 1993(1368:16-19), 2060 (1435:12-20).

There are sound legal reasons for rejecting the district court's (and CareDx's) approach. An establishment claim is a specific theory of literal falsity, requiring the plaintiff prove: (1) the studies or data themselves were not sufficiently reliable to support the claim asserted by the defendant (*i.e.*, the study is so flawed that no claim can be premised on it), or (2) even though the studies or data are reliable, they do not establish the claim asserted by

the defendant (*i.e.*, the study is reliable, but the advertisement misrepresents the study's result). CareDx proved neither. The jury necessarily found that Sigdel was reliable when it rejected CareDx's challenge to Natera's claim that Prospera detected "t-cell mediated rejection" (TCMR) better than AlloSure. *See infra.* And CareDx did not prove any inaccuracy in Natera's claims or comparisons. As noted, the 89% sensitivity that Sigdel reported for to Prospera *is* greater than the 59% sensitivity that Bloom reported for AlloSure.

CareDx distorted the establishment-claim test to smuggle in a theory of misleadingness masquerading as literal falsity, and the court followed suit. Only by conflating "comparisons" and "data" could the court have credited CareDx's argument that "the data underlying the studies," though recited correctly in Natera's advertisements, "was not *reliably comparable* and lacked statistical significance," rendering the otherwise accurate "comparisons of the Sigdel and Bloom studies" literally false. SA.4 (emphasis added).

The district court's analysis runs headfirst into *Miles*, presumably among the "cases from outside the Third Circuit" to which the court alludes but never addresses. SA.4. Here, as in *Miles*, "the conclusions reported in

[the two studies] are not literally false." 868 F. Supp. at 455. The studies report what they report—indeed, in some instances, Sigdel *itself* explicitly made the same comparisons Natera repeated. For example, Sigdel asserts: "In comparison with [Bloom], the novel dd-cfDNA test described in the current study showed a higher AUC value (0.87) as well as greater sensitivity (89%)." JA93; *see* Natera.Op.Br.35 (citing JA2131). Thus, as in *Miles*, Natera faithfully cited and sourced the data from which it drew its comparisons. And as in *Miles*, CareDx introduced no evidence of how nephrologists—who are "presumably aware of the inherent limitations in cross study comparisons," *id.* at 455—read and understood the allegedly false claims. That dooms CareDx's case.

Under these circumstances, as *Miles* persuasively explains, "the issue becomes whether a cross-study comparisons of the two test[s' results] 'is likely to mislead and confuse consumers.'" *Id.* But CareDx disavowed that theory—presumably because it has no evidence of actual deception or reliance. Without it, CareDx could neither establish liability on misleadingness nor prove damages. As a result, CareDx had to prove literal falsity to establish liability. It failed to clear that high standard. *See Riddell, Inc. v. Schutt Sports, Inc.*, 724 F. Supp. 2d 963, 980 (W.D. Wis. 2010).

2. "Reliably Comparable." Quite apart from its conceptual incoherence, a "reliably comparable" theory runs headlong into the verdict. The TCMR claim the jury found true was based upon comparisons of study results. JA676. The jury could not have concluded, as the district court stated, that Natera's comparisons "did not establish *any claim* that Prospera was superior to AlloSure *in any respect*," SA.4 (emphasis added), because we *know* the jury did not agree. It found the TCMR claim—which, like most others, juxtaposed and described Bloom's and Sigdel's results—*was not false*. JA676. The jury could not reach this result unless it credited and deemed reliable the *methodology*, *analysis*, and *data* of the Sigdel study, which found Prospera could identify TCMR using the exact same methodology, analysis, and data that supported the rest of its conclusions. The jury's finding that Sigdel was reliable is amply supported. CareDx's expert witness admitted as much. JA1414-15(793:24-794:11). And the jury knew Sigdel was peer-reviewed, published in a reputable journal, and had its findings accepted by a Medicare panel approving Prospera. JA1167(547:3-23); JA1456-57(835:10-836:7); JA2874-88.

Nor is there any way to salvage the verdict by reasoning around this contradiction. CareDx's critique of Sigdel did not offer the jury a reasonable

basis to distinguish the TCMR claim from the rest; rather, it argued that Sigdel was not reliably comparable for *any* of the statements. The jury rejected that argument. Thus, there was no principled way for the jury to find that the studies or data were "reliably comparable" for purposes of *just* the TCMR claim but not the balance of the claims.

3. Statistical Significance. There also was no basis to conclude that cross-study comparisons require "statistical significance" to be true or that physicians assume a comparison implies it. *See* Natera.Op.Br.16-18. It was undisputed that "statistical significance" is not a fixed value; rather, it is a matter of degree, dependent upon the cutoff chosen. An observed difference could be "statistically significant" at a p-value (*i.e.*, probability) of <.10 but not "statistically significant" at a p-value of <.05. JA1588-89(965:22-966:25). To indicate the fact and degree of statistical significance, such claims typically include a corresponding p-value or confidence interval. JA1397(776:6-13).

None of Natera's advertisements *stated* any comparison was statistically significant. CareDx's expert Dr. Weisbord admitted "not a single one" included "a statement about statistical significance," nor did "a single one" include "a p-value," which is "use[d] to denote statistical significance."

JA1397 (776:3-24). Nor did CareDx introduce *any* evidence that nephrologists would necessarily assume cross-study comparisons (or any comparisons) to be statistically significant.

In fact, the *only testimony* on this issue that CareDx presented was *expressly equivocal*: Dr. Weisbord testified that a physician's assumption of statistical significance would "depend[] on the statement." JA1397-98(776:25-777:3). Thus, on the question at the heart of any theory premised on statistical significance, the only answer CareDx provided was "it depends." That left the jury *completely unguided* as to how real-life nephrologists read and understood these comparisons. Thus, if the jury found falsity based on lack of statistical significance, that finding was inherently unreasonable.

### B. The court's "false by necessary implication" theory requires evidence CareDx failed to offer.

The district court proposes another ground on which the jury could have found falsity—the advertisements *necessarily implied* "the studies and data were reliably comparable and statistically significant." SA.4. This duplicates the reasoning of the first ground. As with an express false statement, falsity by necessary implication requires the plaintiff to prove

"the audience's" understanding of the statement's meaning. *Novartis*, 290 F.3d at 587. Indeed, an impliedly "false message [must] necessarily and unavoidably be received by the consumer." *Id.* at 588. Thus, both theories of falsity require evidence showing how *nephrologists* understood the advertisements, and both fail for the same reason: there was none.

Moreover, even if CareDx had provided the jury with sufficient information from the *audience's* perspective, it never identified a single *unambiguous message* conveyed by necessary implication. *See Novartis*, 290 F.3d at 587. The district court identified the "implicit" false statement as "the studies and data were reliably comparable and statistically significant." SA.4. But the parties—through jury instructions or verdict forms—never asked the jury to evaluate this "statement," let alone determine whether it was unambiguous. What attributes does "reliably comparable" encompass? Statistically significant at what p-value, <0.10 or <0.05? The unanswerable questions vastly outnumber any plausible answers—a hallmark of ambiguity. The advertisements "alone do not require that" the district court's "inference will be made." *Novartis*, 290 F.3d at 588. No other evidence required it, either.

## II. NO JURY COULD HAVE REASONABLY FOUND CLAIMS B-J "LITERALLY FALSE" ON THE EVIDENCE AND THEORIES PRESENTED AT TRIAL.

The district court's claim-by-claim assessments contain minimal claim-by-claim reasoning or analysis. Rather, they restate the same conclusions, incorporating by reference the defective reasoning refuted above. Each should be reversed.

### A. No jury could have reasonably found "Claim B" literally false.

"Claim B" states, "*[w]hen comparing published validation studies*, Prospera demonstrated better performance" on the metric of sensitivity. JA669. That is unambiguously true. As noted above, it is *exactly* what Sigdel "reported." JA93. When you compare the studies' results side-by-side, Prospera's numbers are better than Allosure's. Nonetheless, the court held "[t]here was record evidence from which a rational juror could" find it false "because the data in the two studies are neither comparable nor sufficiently statistically significant to establish" it. SA.7.

But as explained, CareDx gave no basis for the jury to deem sensitivity data (as opposed to TCMR data) "unreliably comparable." And while the district court does not explain what "*sufficiently* statistically significant" means, it underscores CareDx's failure of proof. There was no evidence of

what nephrologists consider "sufficient" for these purposes, and no evidence they necessarily assume comparisons are statistically significant. On that point, all the jury knew was "it depends"—the *opposite* of proof.

**B. No jury could have reasonably found "Claim C" literally false.**

Citing the relevant studies, Claim C states Prospera has "higher sensitivity and nearly 18% higher area under the curve (AUC) than the competitive ddcfDNA assay." JA670. That is exactly what the studies' data show when compared—and, as noted, Sigdel states the proposition almost precisely in this way. JA93. The district court held a jury could reasonably conclude "the data…did not establish this claim" and "the claimed comparison necessarily and falsely implied that the Sigdel and Bloom studies' data were reliably comparable and statistically significant." SA.8. But as discussed, CareDx presented insufficient evidence to reasonably draw this inference—particularly where *the study itself* made the comparative statement.

**C. No jury could have reasonably found "Claim D" literally false.**

The only statement CareDx challenged in Claim D was precisely what the Sigdel study "reported": "In its recently published clinical validation study, *Natera reported* higher sensitivity (89% vs. 59%) and higher area under

the cure (0.87 vs. 0.74) than the competing dd-cfDNA assay." JA671; *see* CareDx.Res.Br.41-42. The district court acknowledges this statement is "indisputably true," *rejecting* CareDx's asserted basis for liability. SA.9. Instead, relying solely on necessary implication, it invoked two vaguer statements contained within the challenged slide, reasoning they "implicitly claimed" Sigdel "demonstrated, based on comparisons of its results with the results of" Bloom, "that Prospera outperformed AlloSure." *Id.*

This reasoning does not withstand scrutiny. The first statement, "Natera Announces Publication of Analytical Validation Demonstrating Superior Precision of Its Kidney Transplant Rejection Assay," JA671, is true. Natera announced publication of Sigdel. Sigdel's data demonstrated superior *precision*, which is a *distinct measurement* of *variance*. JA305 ("The study showed superior assay precision with coefficient of variation up to five times better than previously published studies."); JA383 (Prospera "achieved superior measurement precision close to the classification range, as compared to" Allosure). CareDx never alleged this claim was false—and for good reason. It was *unrefuted* at trial that Prospera has higher precision than Allosure. JA1593(970:6-22).

The second statement, "Core Technology Delivers Superior Analytical Performance, Underpins Outstanding Clinical Performance," is not actionable, and again, CareDx never proved or even *argued* otherwise. "Outstanding performance" is classic puffery, and "superior analytical performance" is too vague (and thus ambiguous) to be literally false. What analytical performance, and on what metric? There was no evidence of what this meant to nephrologists—and the jury found it *true* insofar as Prospera detects TCMR and Allosure does not.

### D. No jury could have reasonably found "Claim E" and "Claim F" literally false.

Claims E and F are straightforward graphical representations of statistics that CareDx does not dispute. They take values drawn from Bloom and Sigdel and compare them by displaying them as infographics. Each graphic compares the numbers and describes their relationships. JA672-73. Claim E has no caption; it merely shows two datapoints and what that means ("3x further rejections missed"), with each datapoint footnoted to its source:



JA672. Claim F similarly displayed data in an infographic, this time in circles.

As with Claim E, all relevant comparative propositions are across studies, with each datapoint sourced to its study of origin:



JA673. The district court relied *solely* on "necessary implication" here, reasoning the jury could have reasonably found "Claims E and F *necessarily and falsely implied*" the "studies' data were reliably comparable and statistically significant." SA.10 (emphasis added).

As noted, though, this theory places CareDx's failure of proof front-and-center. CareDx had to demonstrate that the audience "*unavoidably receive[d] a false message from the product's name or advertising.*" *Novartis*, 290 F.3d at 587 (emphasis added). But CareDx provided no evidence of or from a nephrologist's perspective, let alone proved this sophisticated "audience would recognize [this] claim as readily as if it had been explicitly stated." *Id.* (Recall that "the claim" articulated by the court would be too vague to support literal falsity.) Accordingly, no jury could have reasonably found it unambiguous and false.

### E. No jury could have reasonably found "Claim G" literally false.

As the district court acknowledges, Claim G contains only a single statement (out of five) that is alleged to be false—that "Prospera has a higher area under the curve (0.87) than does AlloSure (0.74)." JA674. Again, this is precisely what Sigdel says: Prospera "showed a higher AUC value (0.87)" than Allosure. JA93. The court held there was sufficient evidence to find

"this comparison necessarily and falsely implied that the Sigdel and Bloom studies' data were reliably comparable and statistically significant." SA.10-11. As above, however, CareDx failed to prove that nephrologists "unavoidably received" this message—or any other.

## F. No jury could have reasonably found "Claim H" unambiguous.

The district court erroneously held a jury could have reasonably found Claim H ("Unparalleled Precision") unambiguous. An advertisement is unambiguous if it has only "one available conclusion" and "one plausible meaning." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 199-200 (3d Cir. 2014); *accord* JA2081 (1456:13-16).

As the district court concedes, CareDx's expert, Dr. Weisbord, *admitted* the term "precision" was "not clearly defined," "includ[es] multiple different things," and was at most "misleading." JA1377-78(756:16-757:2); SA.11. Nor does the brochure define "precision," "unparalleled," or "optimized." JA675. As noted, there is no dispute Prospera has "higher precision," JA1593(970:6-22), so the statement is, on its own, facially true. Thus, the court appears to recognize that, *by itself*, "unparalleled precision," is inherently ambiguous.

The court nonetheless held that, because "unparalleled precision" is "positioned immediately next to and surrounded by assertions based on statistical comparisons of results from the Sigdel and Bloom studies that Prospera outperformed AlloSure in key metrics," "a rational juror could have concluded from that positioning [it] unambiguously communicates that Prospera performs better than AlloSure with respect to these metrics." SA.11-12.

But the "positioning" alone cannot *unambiguously* communicate any measure of performance. "Unparalleled precision" is not "surrounded" solely by assertions alleged to be false. SA.11. That finding is clear error. Instead, the phrase is also surrounded by and positioned next to (true) claims of reducing variability (*i.e.*, precision) and TCMR detection in quadrants 1 and 2:



JA675 (emphasis added). Plainly, "positioning" alone cannot justify denying JMOL because the *entire left half of the page* is true. The district court's conjecture—the jury might *reasonably* have found the term to refer to *just the right half*—is untenable. There was no basis for the jury to conclude "unparalleled precision" referred *unambiguously* to any one factual proposition or combination thereof.

Finally, the court's reliance on "Optimized by Prospera" was misplaced; that phrase is inherently ambiguous. Regardless, the verdict sheet defined "Advertising Claim H" as "Unparalleled Precision," JA675, and CareDx never challenged "Optimized by Prospera." Thus, the jury *did not find*, and *could not have found*, that statement false.

### G. No jury could have reasonably found "Claim J" unambiguous.

Claim J appears as follows:



JA677 (emphasis added). The district court held a rational juror could conclude based on the combination of "the slide's title, '[b]elow 18 years of age' bullet point, and footnote citation that Claim J unambiguously communicates…a study established sensitivity in patients under 18." SA.13.

This was error. Messages that "rel[y] upon the viewer" to "integrate [their] components and draw" a conclusion are unlikely to support literal-falsity liability. *Groupe SEB*, 774 F.3d at 198-99. This is a textbook example. The "viewer" is a nephrologist. CareDx's evidence consisted of a slide listing *all* the study's demographic information, including "n" size (number in each

group). No other advertisement makes anything close to a "pediatric claim"—including the *very presentation* in which the slide appears.

On this record, to find the slide unambiguous, the jury must have concluded *every* nephrologist *necessarily inferred* from disparate text and placement an *implicit assertion* that Prospera had highly sensitive performance in *each and every* subgroup, including pediatric patients—plus *everyone* ("n") in each group—without *any* evidence of nephrologists' perspective. But a nephrologist could have just as easily concluded that the slide referred to Prospera's overall performance, and the slide then simply recounted the demographics of the overall study group. It was unreasonable for the jury to find otherwise, and in any event, CareDx offered no evidence upon which to base that finding.

# CONCLUSION

The Court should reverse the district court's denial of Natera's JMOL challenging liability as to all claims.

Date: January 17, 2025

Respectfully submitted,

Bruce G. Vanyo
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1604
Tel.: 212-940-8800
bruce@katten.com

Kristin J. Achterhof
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661-3693
Tel.: 312-902-5296
kristin.achterhof@katten.com

/s/ Robert T. Smith
Robert T. Smith
Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave. NW, Ste. 800
Washington, DC 20006-3404
Tel.: 202-625-3500
robert.smith1@katten.com
timothy.gray@katten.com

*Counsel for Natera, Inc.*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that all attorneys whose names appear on this Brief are members of the Bar of this Court.

Dated: January 17, 2025

/s/ Robert T. Smith
Robert T. Smith
*Counsel for Natera, Inc.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the word limitation of the Court's October 8, 2024 Order because it contains 3,746 words, excluding those parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in Microsoft Word 2016 using a proportionally spaced typeface (Book Antiqua) in 14-point font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of the electronic brief is identical to the text of the paper copies, and because Trend Micro Apex One, Version 14.0.11564, has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: January 17, 2025    /s/ Robert T. Smith
                Robert T. Smith
                *Counsel for Natera, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing Supplemental Brief to be filed on January 17, 2025, with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the Court's electronic filing system, which will send a notice of electronic filing to all attorneys appearing in this matter.

Dated:  January 17, 2025

/s/ Robert T. Smith
Robert T. Smith
*Counsel for Natera, Inc.*